UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGORI JOSE SANCHEZ PAREDES, <br><br> Petitioner, <br><br> v. <br><br> DAVID WESLING, Boston Field Office Director, U.S. Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"), <br><br> Respondents. | Civil Action No. 1:26-cv-10157-BEM |

**RESPONDENTS' OPPOSITION TO PETITIONER'S
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241**

Respondents by and through his attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submits this opposition to Gregori Jose Sanchez Paredes' ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). Doc. No. 1.

**INTRODUCTION**

Petitioner fails to meet his burden to demonstrate his detention by U.S. Immigration and Custom's Enforcement's ("ICE") is unlawful and deserving of an order from this Court that he be released.

Petitioner has illegally entered the United States twice and has been removed to Venezuela previously. *See* Declaration of Supervisory Detention and Deportation Officer, Brian E. Sullivan,

attached as Exhibit A, ¶¶ 7-9. He is subject to a final order of removal from the United States, but he has claimed a fear of return to Venezuela and is therefore pursuing withholding-only proceedings before an Immigration Judge ("IJ") in Immigration Court. *Id.*, ¶¶ 10-15. Upon his second illegal entry, Petitioner was arrested and detained in 2023, but ICE exercised its discretion and released him on an Order of Supervision ("OSUP") in 2024 as authorized by 8 U.S.C. § 1231(a)(3). *Id.*, ¶ 16. ICE recently revoked such OSUP pursuant its regulatory authority as ICE determined that the purpose of Petitioner's release had been served and that it is appropriate to enforce the removal order pending his withholding hearing.[1] *Id.*, ¶¶ 17-18. Petitioner claims his detention violates 8 U.S.C. §§ 1231(a)(3) and 1231(a)(6) and the Fifth Amendment's Due Process Clause. Both claims fail, however.

Section 1231(a)(6) permits detention at ICE's discretion for individuals who are pursuing withholding-only proceedings. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021) (Holding that Section 1231 governs the detention of an alien with a reinstated removal order while the alien pursues withholding of removal). And, as the Supreme Court held in *Johnson v. Arteaga-Martinez,* this provision does not authorize bond hearings to allow individuals to seek release. 596 U.S. 573, 574 (2022). As such, his claim that he is entitled to release is foreclosed by statute and Supreme Court precedent. Petitioner also implicitly attacks the procedure ICE used to revoke his OSUP and return him to custody. This challenge also fails as ICE complied with the relevant regulations that provide ICE with ample discretion to revoke release.

---

[1] As explained below, even if Petitioner succeeds in his claim of withholding of removal, such protection attaches only to removal to Venezuela. Per 8 U.S.C. § 1231(b), ICE could seek to remove Petitioner to an alternative country because he would remain subject to a final order of removal from the United States.

Petitioner's brief detention is statutorily authorized and Constitutional under the Fifth Amendment as "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). As to his Due Process claim, the Supreme Court also set forth a framework for analyzing the Constitutionality of post-final order detention under Section 1231(a)(6) in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In *Zadvydas*, the Court held that post-final order detention under Section 1231 is presumptively reasonable for six months. *Id.* at 701. An individual seeking release after six-months of post-final order detention must first "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id*. Only after meeting this initial burden is the Government required to "respond with evidence sufficient to rebut that showing." *Id.*

The U.S. Court of Appeals for this First Circuit applied this *Zadvydas* framework in *G.P. v. Garland*, 103 F.4th 898, 901-02 (1st Cir. 2024) and held that an alien detained by ICE for more than four years while he pursued withholding-only protection could not meet his initial burden because his detention was not indefinite—it would end upon the conclusion of the proceedings with a release into the United States or a removal outside the United States. Here, Petitioner has been detained for less than three months, and therefore his Constitutional challenge to Section 1231(a)(6) detention is premature, even if it was not destined to fail based on First Circuit precedent.

**FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a native and citizen of Venezuela who illegally entered the United States on or about November 16, 2023. Exh. A, ¶¶ 6-7. Petitioner was issued an expedited removal order the next day and removed to Venezuela on November 22, 2023. *Id.*, ¶ 8. Petitioner illegally reentered the United States on or about December 2, 2023 and was arrested and detained by the

3

U.S. Border Patrol. *Id.*, ¶ 9. Petitioner's prior removal order was reinstated on that date under 8 U.S.C. § 1231(a)(5), but Petitioner claimed a fear of return to Venezuela and therefore his removal was not effectuated, and he was instead referred for an interview with U.S. Citizenship and Immigration Services ("USCIS") as to his fear of return. *Id.*, ¶¶ 10, 12-13. In February 2024, USCIS referred Petitioner's case to an IJ after it determined Petitioner expressed a reasonable fear of persecution or torture. *Id.*, ¶¶ 14-15.

On March 15, 2024, ICE released Petitioner pursuant to an OSUP. *Id.*, ¶ 16. On November 12, 2025, ICE arrested and detained Petitioner after it revoked his OSUP pursuant to 8 C.F.R. § 241.4. *Id.*, ¶¶ 17-18. ICE issued Petitioner with a Notice of Revocation of Release, signed by Acting Field Office Director David Wesling, that explained that Petitioner's OSUP had been revoked and that ICE was therefore detaining him as ICE had determined the purpose of his prior release had been served and it was appropriate to enforce the removal order pending his withholding of removal hearing. *Id.,* ¶ 18. Thereafter, ICE conducted an informal interview to afford Petitioner an opportunity to respond to the reasons for the revocation. *Id.,* ¶ 19. Petitioner did not provide a written statement or any documentation in response. *Id.*
On December 30, 2025, Petitioner was also issued a Notice of Custody Review that explained that ICE would conduct an additional custody review on or about January 31, 2026 and that Petitioner could submit documentation to be reviewed by ICE prior to January 26, 2026 to be considered. *Id.,* ¶ 20.

Upon completion of Petitioner's withholding-only Proceedings, barring any legal impediments or orders from this Court, ICE intends to effect the removal of Petitioner from the United States, whether to Venezuela or a third country, as appropriate. *Id.,* ¶ 22.

4

**LEGAL STANDARD**

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Section 2241 of Title 28 of the United States Code provides district courts with jurisdiction to hear federal habeas petitions.

It is Petitioner's burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

**ARGUMENT**

ICE's detention of Petitioner is authorized by statute and regulation and does not offend the Constitution—as such, this Court should deny the Petition.

**A. Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1231.**

ICE's detention authority stems from 8 U.S.C. § 1231, which provides for the detention and removal of aliens with final orders of removal. Section 1231(a)(1)(A) directs immigration authorities to remove an individual with a final order of removal within a period of 90 days; this is known as the "removal period." During the removal period, Section 1231(a)(2) commands that ICE "shall detain" the alien.

An individual who has been removed from the United States pursuant to a final order of removal, and who thereafter re-enters the United States illegally, is subject to a statutory provision

5

that allows immigration authorities to reinstate the original removal order and proceed with removal again. 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8; *Guzman Chavez,* 594 U.S. at 529.[2]

If the removal period has expired, ICE can either release the alien pursuant to an OSUP as directed by Section 1231(a)(3) or may continue detention under Section 1231(a)(6). Per Section 1231(a)(6), ICE may continue detention beyond the removal period for three categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;
- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or
- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

Because Petitioner's order of removal was final in 2023, Petitioner is now outside of the 90-day removal period during which the government "shall detain" the individual. 8 U.S.C. § 1231(a)(2). Based on the plain language of Section 1231(a)(6), however, ICE maintains authority to arrest and detain an individual outside the removal period to effectuate a final order of removal.

Petitioner's argument that ICE is detaining him unlawfully under Section 1231(a)(6) is without merit. As multiple sessions of this Court have recently explained, § 1231(a)(6) allows ICE to detain individuals with final orders of removal if they are inadmissible to the United States, even if this detention comes after the removal period has expired. *See e.g., Hernandez Martinez*

---

[2] Removal, however, cannot immediately proceed if the individual expresses a fear of return to his home country. 8 C.F.R. § 241.8(e). And, if his fear is deemed reasonable by an asylum official, the individual is entitled to file an application for withholding of removal and protection under the Convention against Torture in Immigration Court. 8 C.F.R. § 208.31. Such an individual is in withholding-only proceedings before an IJ and can appeal the IJ's decision to the BIA if his protection application is denied. *Id.* § 208.31(e). Even if an IJ grants a noncitizen protection from removal, such individual nonetheless remains subject to a final order of removal and ICE can seek to remove the noncitizen to a third country. 8 U.S.C. § 1231(b); *Guzman Chavez,* 594 U.S. at 531-32.

*v. Hyde,* No. CV 25-13852-NMG, 2025 WL 3719841, at *1 (D. Mass. Dec. 23, 2025) (Even when removal period has "long since lapsed", because petitioner was subject to a removal order and was inadmissible, "he may nonetheless be detained under [8 U.S.C.] § 1231(a)(6)."); *Thai v. Hyde*, 788 F. Supp. 3d 57, 61 (D. Mass. 2025) (Explaining that Section 1231(a)(6) allows for detention beyond the removal period for those who are inadmissible under Section 1182); *Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331, 335 (D. Mass. 2017 (Finding ICE "has statutory authority" under Section 1231(a)(6) to arrest and detain an inadmissible alien beyond the removal period.).

Based on the plain language of the statute, Petitioner's argument that his detention is somehow unlawful because of his contention that he is neither a flight risk nor a danger is without merit as no such requirement is contained within the provision, which instead allows for detention for individuals with final orders who are inadmissible. Petitioner is inadmissible to the United States under at least two provisions of the INA. First, Section 1182(a)(6)(A)(i) applies to noncitizens, such as Petitioner, "present in the United States without being admitted or paroled." Second, Section 1182(a)(9)(C) renders noncitizens, such as Petitioner, who have been ordered removed from the United States, and who then re-enter without being admitted, inadmissible. As such, Petitioner is mistaken that Section 1231(a)(6) only authorizes detention for individuals who have violated conditions of release or whom ICE has deemed to be a danger to the community and a flight risk. *See Quezada-Martinez v. Moniz*, 722 F. Supp. 3d 7, 11 (D. Mass. 2024) (Agreeing that petitioner's "detention is authorized by § 1231(a)(6)" as such "finding comports with the text of the statute as well as with recent Supreme Court precedent.").[3]

---

[3] The Supreme Court in *Johnson v. Arteaga-Martinez* answered the question of "whether the text of § 1231(a)(6) requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and

Finally, his recent detention does not violate Section 1231(a)(6) as he claims on account of ICE's inability to "effect his prompt removal" as again there is no such requirement within this statutory provision, and the Supreme Court has instead explained Section 1231(a)(6) allows for detention for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.

### B. ICE's Revocation of Release Comports with Regulation.

While 8 U.S.C. § 1231(a)(3) is silent as to revocation procedures for individuals like Petitioner who are released pursuant to an OSUP, ICE has issued Post-Order Custody Regulations ("POCR") contained at 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 to set forth procedures concerning custody reviews, release from ICE custody, and revocation of release for individuals with final orders of removal. By regulation, ICE has significant discretion to revoke an OSUP and return an individual to custody. *See Leybinsky v. U.S. Immigr. & Customs Enf't,* 553 F. App'x 108, 110 (2d Cir. 2014) (Remarking on the "broad discretionary authority the regulation grants ICE" to revoke release."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (Explaining that while the revocation regulation "provides the detainee some opportunity to respond to the reasons for revocation, it provides no other procedural and no meaningful substantive limit on this exercise of discretion …."); *Tanha v. Warden, Baltimore Det. Facility*, No. 1:25-CV-02121-JRR, 2025 WL 2062181, at *5 (D. Md. July 22, 2025) (Noting that the "regulation permits the Government extraordinarily broad discretion to revoke an OSUP").

---

convincing evidence that a noncitizen poses a flight risk or a danger to the community." 596 U.S. 573, 574 (2022). It responded definitively, holding that Section 1231(a)(6)'s plain text, which "says nothing about bond hearings before immigration judges or burdens of proof" [and] "directs that we answer this question in the negative." *Id.* at 581.

ICE can revoke release when an individual violates conditions of release. 8 C.F.R. § 241.4(l)(1). Additionally, ICE can revoke release when "[t]he purposes of release have been served," when "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or when "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id.* § 241.4(l)(2)(i)-(iv).

When ICE revokes release of an individual under either provision, ICE must conduct an "informal interview" to advise the individual of the basis for revocation and must also serve the individual with a written notice of revocation. 8 C.F.R. § 241.4(l). If ICE determines revocation remains appropriate after conducting the informal interview, then ICE will provide notice to the individual of a further custody review where the alien can provide information that ICE can consider in making a further custody determination. 8 C.F.R. § 241.4(l)(3); *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 651 (D. Mass. 2018) (Explaining that for an alien detained beyond the removal period, no advance notice prior to detention is required, but the custody review should occur within 30 days of detention).

Here, ICE issued Petitioner a written revocation notice signed by its Acting Field Office Directors explaining that ICE revoked Petitioner's release pursuant to 8 C.F.R. § 241.4 on account of ICE's determination that the purpose of Petitioner's release had been served and therefore it was appropriate to enforce the removal order pending his withholding hearing. Exh. A, ¶ 18. ICE also conducted an informal interview as required by the regulations to provide Petitioner with this explanation as to why it was revoking his release and returning him to detention. *Id.*, ¶ 18. Additionally, ICE provided Petitioner with notice of his custody review that is scheduled for the end of this month. *Id.*, ¶ 20.

Therefore, by revoking release, ICE complied with the regulations that allow revocation when ICE determines that it "is appropriate to enforce a removal order". 8 C.F.R. § 241.4(l)(2). Courts recognize the ample discretion the regulations provide to ICE to make the determination to revoke an OSUP and return an individual to custody under Section 241.4. As explained by another session of this Court, when ICE "determined that revocation was necessary to initiate Doe's removal … [n]o further justification was required." *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *11 (D. Mass. Oct. 1, 2018). Other courts recognize similarly. *See e.g., Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 382 (D. Md. 2025) (Finding no support to contention that "the existence of a withholding-of-removal order renders inapplicable the regulation authorizing detention to 'enforce a removal order.'"); *Tanha*, 2025 WL 2062181, at *5 (Explaining that "the regulation does not compel the Government to demonstrate what facts or factors, if any, it based its decision to revoke under subsections (i), (iii), or (iv)"); *Roe v. Oddo*, No. 3:25-CV-128, 2025 WL 1892445, at *8 (W.D. Pa. July 9, 2025) (Explaining that the court would not "scrutinize ICE's discretionary decision" to determine that "it was appropriate to enforce [p]etitioner's removal order").

Petitioner complains that ICE revoked his OSUP "without any reason given and without any advance notice". Doc. No. 1, ¶ 35. ICE, however, did conduct 8 C.F.R. § 241.4(l)'s required "informal interview" with Petitioner on explain the basis for his revocation and served him with a written notice of revocation soon after his arrest. Exhibit A, ¶¶ 18-19. And, as numerous courts have recognized, ICE is not required to provide advance notice of its intent to revoke release for the obvious reason that could encourage flight or increase law enforcement safety concerns. *Doe*, 2018 WL 4696748, at * 7 (Explaining that the "regulation does not require that a petitioner or her counsel be given 30 days' notice prior to the initial informal interview."); *Hammouda v. U.S. Dep't*

10

*of Homeland Sec.,* No. 4:25-CV-2696, 2026 WL 91465, at *4 (N.D. Ohio Jan. 13, 2026) ("The regulation's text does not require notice or an informal interview before detention."); *Moran v. U.S. Dep't of Homeland Sec.*, No. EDCV2000696DOCJDE, 2020 WL 6083445, at *9 (C.D. Cal. Aug. 21, 2020) (Expressing skepticism about "the source of any due process right to advance notice of revocation of supervised release or other removal-related detention.").

Based on the above, there is no basis to find Petitioner's detention unlawful as ICE complied with the relevant regulations in revoking release. *See Doe,* 2018 WL 4696748, at *10 (dismissing habeas claim where "there was no regulatory violation" in connection with custody reviews); *Silva v. Moniz*, No. 20-CV-12255-DJC, 2021 WL 2953338, at *4 (D. Mass. July 14, 2021) (Declining to find Due Process violation due to purported lack of a neutral and impartial decisionmaker when ICE followed its POCR regulations and the custody decision "provide[d] no evidence of lack of impartiality.")  For these reasons, his implicitly raised challenge to his detention post-OSUP revocation fails.

### C. Petitioner's Statutorily Authorized Detention is Constitutional.

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause on his theory that he is not a flight risk or a danger to the community and because ICE cannot effect his removal while he pursues withholding only proceedings, but these claim fail as well.

Petitioner first argues that his detention is constitutionally infirm because he is neither a danger nor a flight risk.  As noted above, detention under Section 1231(a)(6) does not require a prerequisite finding of danger or flight risk if the alien is inadmissible to the United States, as Petitioner is.  As such, ICE's arrest and detention of Petitioner pursuant to statute does not violate his substantive due process rights. *See Herrera-Inirio v. I.N.S.,* 208 F.3d 299, 309 (1st Cir. 2000)

("Executive actions that do no more than comport with valid statutory commands simply are not the stuff from which substantive due process violations can be fashioned.").

Moreover, as recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. The First Circuit has also recognized that the "execution of removal orders is a legitimate governmental interest which detention may facilitate." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 32 (1st Cir. 2021) (cleaned up). *See also Aguilar v. U.S. Immigration and Customs Enforcement*, 510 F.3d 1, 22 (1st Cir. 2007) (Recognizing the government's "legitimate interest in effectuating detentions pending the removal of persons illegally in the country.").

As explained by the Supreme Court, when evaluating "reasonableness" of detention, the touchstone is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. And here, it does. The flight risk of an alien, such as Petitioner, with a final order of removal and a history of prior removals and illegal re-entries is apparent as such individuals "who reentered the country illegally after removal have demonstrated a willingness to violate the terms of a removal order, and they therefore may be less likely to comply with the reinstated order." *Guzman Chavez*, 594 U.S. at 544.

To set forth a constitutional violation for section 1231 detention, an individual must satisfy the *Zadvydas* test. *See Jimenez v. Cronen,* 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (explaining that "*Zadvydas* addressed the substantive due process component of the Fifth Amendment. The Supreme Court held, in effect, that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to procedural due process had been satisfied"); *Castaneda v. Perry,* 95 F.4th 750, 760 (4th Cir. 2024) (explaining that "*Zadvydas*, largely, if not

entirely forecloses due process challenges to § 1231 detention apart from the framework it established").

In *Zadvydas*, the Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period. 533 U.S. at 682. The Supreme Court "read an implicit limitation into the statute . . . in light of the Constitution's demands" and held that section 1231(a)(6), "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689.

The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the individual does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Petitioner's substantive due process challenge fails under his present circumstances. First, a prior release pursuant to an OSUP does not provide Petitioner with a constitutional basis not to be arrested again in the future if ICE determines effectuation of his removal order is possible or if ICE determines Petitioner has violated the terms of his Order of Supervision. As explained by another session of this Court, if "the government in granting discretionary relief to an alien foreswears its ability to later detain an alien as part of the removal mechanism, then the government would have every incentive to abstain from any favorable exercise of discretion." *Rodriguez-Guardado,* 271 F. Supp. 3d at 335. Stated similarly, "[it] does not withstand scrutiny to suggest

that upon securing the liberty afforded by an OSUP, after six months have passed, a non-citizen has effectively been granted a shield to guard himself from detention upon revocation while removal is in process." *Tanha*, 2025 WL 2062181, at * 8; *Hango v. U.S. Att'y Gen.*, No. 3:05-CV-2196, 2019 WL 1301981, at *2 (W.D. La. Mar. 21, 2019) (Explaining that a prior order of release on account of the lack of ability to remove an alien "did not amount to a permanent injunction against future detention.").

Next, Petitioner has been detained for less than three-months and he cannot satisfy his burden to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future. *Zadvydas,* 533 U.S. at 701. As recently noted by another session of this Court, "detention under § 1231(a)(6) is presumed to be constitutionally valid for a period of up to six months." *Hernandez Martinez*, 2025 WL 3719841, at *2 (Because petitioner "has been detained for less than two weeks … [s]uch relatively brief detention does not violate his right to due process under the United States Constitution."). *See also D'Ambrosio v. McDonald,* 793 F. Supp. 3d 271, 278 n.8 (D. Mass. 2025) (Explaining that "petitioner has been detained for less than six months, rendering his detention under § 1231 presumptively valid at this time."); *Thai*, 788 F. Supp. 3d at 61 (Denying due process challenge for alien detained for "17 days, far short of the six-month period which is presumptively constitutional under *Zadvydas*."); *Rodriguez-Guardado*, 271 F. Supp. 3d at 335 ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process.").

Additionally, the First Circuit has determined that an individual, detained for more than four years as he pursued withholding-only proceedings, could not make the initial showing to demonstrate his detention violated the *Zadvydas* framework because his "situation is readily distinguishable from *Zadvydas*." *G.P.,* 103 F.4th at 901. Unlike the two noncitizens in the

14

*Zadvydas* case who faced potentially permanent detention because of being stateless, the First Circuit found that G.P.'s detention while pursuing withholding of removal was finite because "if he is ultimately denied relief, the government will be able to move forward with removing him" from the United States. *Id.* As such, the First Circuit, joining the Fourth and Sixth Circuits, held that the individual, despite being detained for four-years and with resolution of withholding of removal proceedings nowhere near imminent, "has failed to show that there is no significant likelihood of his removal in the reasonably foreseeable future." *Id.* (internal quotations omitted). This holding squarely applies to Petitioner's detention claim, and at bottom, Petitioner's detention for three months, "pending his withholding-only proceedings does not, standing alone, offend the Due Process Clause." *Castaneda*, 95 F.4th at 760. *See also Nolasco Renderos v. Baker,* No. 25-CV-3087-ABA, 2026 WL 40061, at *7 (D. Md. Jan. 7, 2026) (Explaining that "[w]hen a person is seeking withholding of removal and the procedures to which the person is entitled are ongoing, the normal delay associated with those procedures cannot, at least standing alone, give rise to a *Zadvydas* claim.").

Finally, as explained above, ICE complied with its regulatory authority in revoking Petitioner's release and any claim that ICE violated the Constitution in doing so is without merit. As noted, Petitioner makes a claim that his revocation was done without advance notice. The regulation does not require advance notice, and neither does the Constitution. *See Reyes v. King,* No. 19 CIV. 8674 (KPF), 2021 WL 3727614, at *10 (S.D.N.Y. Aug. 20, 2021) (Explaining that "the Due Process Clause of the Fifth Amendment does not entitle [p]etitioner to such a [pre-detetion] hearing at this specified time, and [p]etitioner cites no authority within this Circuit that counsels otherwise."); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 929 (W.D. Tex. 2018) (Finding no "due process right to not be snatched off the street without warning" when ICE

15

revoked discretionary parole and returned individual to custody.). The regulation requires that ICE provide an informal interview to explain the basis for the revocation and to provide a written notice and ICE complied with both provisions.

Petitioner can challenge his detention and seek release through the regulatory provisions that apply for individuals detained with final orders of removal. Courts routinely conclude that such regulations are permissible to protect individual's Constitutional rights while detained. *See e.g., Thai,* 788 F. Supp. 3d at 61 ("The constitutional validity of § 241.4 has not been disputed and, in fact, other courts have routinely denied due process challenges where ICE has met its regulatory obligations."); *Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) ("When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required."); *Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *6 (S.D.N.Y. Mar. 18, 2022) (Collecting cases supporting conclusion that the POCR framework has routinely been deemed constitutional and noting that petitioner had not "cite[d] legal authority in support of his generalized laments about the administrative process.").

Petitioner's detention is fully permissible and does not violate the Fifth Amendment's Due Process Clause and therefore his claim for release must be rejected.

## **CONCLUSION**

For the above reasons, Petitioner's assertion of unlawful detention in violation of statute, regulation, and the Constitution fails. As such, this Court should deny his plea for release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: January 27, 2026     By:     */s/ Mark Sauter*
Mark Sauter
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3347
Email: mark.sauter@usdoj.gov

**CERTIFICATE OF SERVICE**

    I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: January 27, 2026     By:     */s/ Mark Sauter*
Mark Sauter
Assistant United States Attorney