UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGORI JOSE SANCHEZ PAREDES,<br><br>Petitioner,<br><br>v.<br><br>DAVID WESLING, Boston Field Office Director, U.S. Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"),<br><br>Respondents. | Civil Action No. 1:26-cv-10157-BEM |

## RESPONDENTS' EXPANSION OF THE RECORD

Respondents by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully expand the record as ordered by the Court. Doc. No. 10. The Court has directed Respondents to expand the record of the Habeas Petition filed by Petitioner by January 30, 2026, at 1 p.m., to include any relevant materials concerning: (1) whether Petitioner's removal is "reasonably foreseeable," *see Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); (2) the basis for Petitioner's March 2024 order of release; (3) if Petitioner's March 2024 release was premised on "no significant likelihood of removal," under 8 C.F.R. s. 241.13, any "individualized determination" made by ICE prior to revocation regarding Petitioner's likelihood of removal, *see Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023).

**1. Petitioner's removal is 'reasonably foreseeable'.**

While this Court asks Respondents to explain whether Petitioner's removal is "reasonably foreseeable" under the *Zadvydas* analysis, based on such analysis and precedent from the U.S. Court of Appeals for the First Circuit, it is Petitioner who bears the initial burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas,* 533 U.S. at 701. As explained below, Petitioner cannot meet his burden while he pursues withholding only proceedings as clearly explained by the First Circuit in *G.P. v. Garland*, 103 F.4th 898, 901-02 (1st Cir. 2024). As such, under the *Zadvydas* analysis, since Petitioner cannot meet his initial burden, the Government is not required to "respond with evidence sufficient to rebut that showing." *Zadvdyas*, 533 U.S. at 701. But, even if the Government was required to respond, such burden is met as Petitioner remains detained only because of his pursuit of withholding-only proceedings and has been successfully removed to Venezuela in the past.

In *Zadvydas*, the Court held that post-final order detention under Section 1231 is presumptively reasonable for six months. *Id.* at 701. An individual seeking release after six-months of post-final order detention must first "provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id*. Only after meeting this initial burden is the Government required to "respond with evidence sufficient to rebut that showing." *Id.* As such, based on Supreme Court precedent, it is evident that it is Petitioner, not the Respondents, who bears the initial burden to demonstrate that "there is no significant likelihood of removal in the reasonably foreseeable future". *Id.*

In the same context of this instant action, the First Circuit applied this *Zadvydas* framework in *G.P. v. Garland* and held that an alien detained by ICE for more than four years while he pursued withholding-only protection failed to meet his initial burden to establish no significant likelihood

of removal in reasonably foreseeable future. 103 F.4th at 901-02. As the First Circuit explained, this was because "he is being detained because his CAT proceedings remain pending." *Id.* at 902. While acknowledging that the length of these proceedings "now well surpasses the presumptively reasonably six-month post-removal period set out in *Zadvdyas*" the First Circuit cast no aspersion on the lawfulness of such detention as "there is no indication that they have dragged on because of bad faith or undue delay by the agency." *Id.* And, crucially, "G.P. does not dispute that, if he is ultimately denied relief, the government will be able to move forward with removing him for a second time to the Dominican Republic." *Id.* As such, the First Circuit explained that there "thus appears to be little chance of a removable-but-unremovable limbo for him." *Id.* Stated further, "once G.P.'s current withholding-only proceedings end, he will either be removed to the Dominican Republic or the government will have to begin the process of finding a different country to accept him." *Id.* Therefore, even for an alien detained more than four years while pursuing withholding only proceedings, the First Circuit determined that "he has failed to show that there is 'no significant likelihood of [his] removal in the reasonably foreseeable future.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 701).

In reaching this conclusion, the First Circuit "align[ed] ourselves with all of the circuit courts that have considered analogous circumstances." *Id.* citing *Castaneda v. Perry*, 95 F.4th 750 (4th Cir. 2024) and *Martinez v. Larose*, 968 F.3d 555 (6th Cir. 2020). The First Circuit also noted that G.P. was "unable to provide any decision where a court ordered a noncitizen to be released under *Zadvydas* while removal or withholding-only proceedings remained pending before the agency." *Id.*

As recognized by the First Circuit in *G.P.*, courts across the country routinely reach similar decisions and reject habeas petitions such as Petitioner's under the theory that the alien cannot

meet his initial burden under *Zadvydas*. *See e.g., Perez v. Berg*, No. 24-CV-3251 (PAM/SGE), 2025 WL 566884, at *3 (D. Minn. Jan. 6, 2025), *report and recommendation adopted*, No. CV 24-3251 (PAM/ECW), 2025 WL 566321 (D. Minn. Feb. 20, 2025) (Denying habeas petition when petitioner "has provided no evidence in the record other than the passage of time [10 months] to demonstrate that he is not likely to be removed in the foreseeable future."); *Lojo v. Garland*, No. 6:22-CV-06340 EAW, 2023 WL 2867791, at *4 (W.D.N.Y. Apr. 10, 2023) ("Plaintiff has not satisfied his initial burden. Plaintiff has come forward with no evidence to suggest that he cannot be swiftly removed upon the conclusion of his withholding-only proceedings, assuming he is not successful thereon."); *Bautista-Avelino v. Rice*, No. 1:23-CV-00180 SEC P, 2023 WL 3370463, at *3 (W.D. La. Apr. 20, 2023), *report and recommendation adopted*, No. 1:23-CV-00180-P, 2023 WL 3366977 (W.D. La. May 10, 2023) (Explaining that "detention is not unreasonable under *Zadvydas* as a matter of law because there is a significant likelihood that his removal is reasonable foreseeable once withholding-only proceedings end."); *Xie Deng Chen v. Barr*, No. 1:20-CV-00007-SL, 2021 WL 2255873, at *4 (N.D. Ohio Feb. 5, 2021) (same); *Rodriguez v. Meade*, No. 20-CV-24382, 2021 WL 671333, at *5 (S.D. Fla. Feb. 22, 2021) (same); *Manzano v. Rodriguez*, No. CV 17-11846 (JLL), 2018 WL 1617703, at *2 (D.N.J. Apr. 3, 2018) (same); *Khemlal v. Shanahan*, No. 14 CIV. 5186 AJP, 2014 WL 5020596, at *5 (S.D.N.Y. Oct. 8, 2014) (same).

Here, Petitioner has been detained for less than three-months and he cannot satisfy his burden to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Instead, like the alien in *G.P.*, it is undisputed that Petitioner has not been removed to Venezuela for the second time because of his participation in withholding-only proceedings. ICE regularly removes aliens to Venezuela and will move expeditiously to effectuate Petitioner's return to Venezuela upon the conclusion of his withholding

only proceedings if he is not successful. Petitioner does not contend, and nor could he, that Venezuela is unlikely to accept his repatriation.

As in other cases, here "the facts do not show that the ongoing proceedings will continue indefinitely, or that serious errors, negligence, or other arbitrary actions have contributed to the delay" in removal. *Fuentes-De Canjura v. McAleenan,* No. EP-19-CV-00149-DCG, 2019 WL 4739411, at *7 (W.D. Tex. Sept. 26, 2019). Instead, once Petitioner's withholding-only proceedings conclude, he will be released – either to Venezuela, back into the United States pursuant to an Order of Supervision, or even conceivably with removal to a third country.

Petitioner's detention, authorized by 8 U.S.C. § 1231(a)(6), remains lawful as analyzed by the *Zadvydas* framework. His detention "is not the type of detention that *Zadvydas* prohibits" as it is not indefinite or potentially permanent—instead, his detention "has a definite endpoint: [when his withholding only proceedings conclude], and after that decision, nothing will impede his removal or, presumably, release." *Zymak v. Adducci*, No. 20-11786, 2020 WL 5017534, at *8 (E.D. Mich. Aug. 25, 2020). Explained by another court, "[f]or obvious reasons, a noncitizens' use of the American judicial process, to the extent it delays removal, does not warrant release under *Zadvydas*." *Portillo v. Decker,* No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *5 (S.D.N.Y. Mar. 18, 2022).

For these reasons, Petitioner, based on First Circuit precedent, cannot meet his initial burden under *Zadvydas* to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" because his detention is not indefinite—it will end upon the conclusion of his withholding only proceedings with a removal outside the United States or a release into the United States.

2. **Petitioner's 2024 release was on account of 8 C.F.R. § 241.4's custody review**.

As previously noted, after Petitioner was removed to Venezuela in November 2023, Petitioner illegally re-entered the United States on or about December 2, 2023, and was arrested and detained by U.S. Border Patrol. Petitioner's prior removal order was reinstated on that date under 8 U.S.C. § 1231(a)(5), but Petitioner claimed a fear of return to Venezuela and therefore his removal was not effectuated, and he was instead referred for an interview with U.S. Citizenship and Immigration Services ("USCIS") as to his fear of return. In February 2024, USCIS referred Petitioner's case to an IJ after it determined Petitioner expressed a reasonable fear of persecution or torture.

On February 2, 2024, ICE served Petitioner with a Notice that it would be conducting a custody review pursuant to its Post-Order Custody Regulations contained at 8 C.F.R. § 241.4. *See* Exhibit A. Per Section 241.4(h)(1), the local ICE Field Office Director is responsible for conducting an "initial custody review" ... "prior to the expiration of the removal period." *See also* 8 C.F.R. § 241.4(k)(1)(i) (Explaining that prior to the expiration of the removal period, the Field Office Director shall conduct a custody review "where the alien's removal, while proper, cannot be accomplished during the period, or is impracticable or contrary to the public interest."). Prior to conducting this review, per Section 241.4(h)(2), ICE must provide notice to the alien approximately 30 days in advance of the review. Such notice was provided, as noted, on February 2, 2024. Exh. A.

In conducting this review, ERO will review "the alien's records and any written information" submitted by the alien and may also "consider any other relevant information relating to the alien or his or her circumstances and custody status." 8 C.F.R. § 241.4(h)(1). The Field Office Director must also review the factors set forth in Section 241.4(f) and must also be able to reach the conclusions set forth in Section 241.4(e) before deciding to release. *Id.* at 241.4(h)(3).

Once a decision to release has been made, the Field Office Director "will notify the alien in writing that he or she is to be released from custody". *Id.* at 241.4(h)(4).

On March 15, 2024, ICE released Petitioner pursuant to an Order of Supervision issued by the Deputy Field Office Director, on behalf of the Field Office Director, for ICE ERO Houston. *See* Exhibit B. Per Section 241.4(d), ICE must provide the alien with a copy of the decision to release, but the regulation does not require ICE to set forth the specific basis for its release decision. The Release Notification provides that "[u]pon review of your case, [ICE] has concluded that you will be released from ICE custody pending your removal from the United States." Exh. B. Such release, done after the 90 day custody review required under Section 241.4(h) & (k) is evidence that ERO Houston considered the required factors under Section 241.4(e) and (f) and that ERO Houston released Petitioner after he demonstrated to ICE's satisfaction "that his or her release will not pose a danger to the community or the safety of other persons or to property" and that he did pose "a significant risk of flight". *Id.* at 241.4(d)(1).

### 3.  **Petitioner's March 2024 release was not premised on "no significant likelihood of removal," under 8 C.F.R. s. 241.13**

As explained above, ICE ERO Houston's Deputy Field Office Director made the decision to release Petitioner under Section 241.4 at the conclusion of the custody review required prior to the expiration of the 90-day removal period. This release was not premised on a "no significant likelihood of removal" determination under 8 C.F.R. § 241.13 as such determination is made at the ICE ERO Headquarters level for aliens who "are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a).

7

Under the POCR process, the consideration of whether there a significant likelihood of removal occurs at the ICE ERO Headquarters level after the 90-day removal period has expired. If the Field Office Director does not release the alien at the expiration of the removal period, the Field Office Director "may retain responsibility for custody determinations for up to three months after expiration of the removal period". 8 C.F.R. §241.4(k)(1)(ii). If release is not done in that three-month period, then the Field Office Director refers the case to ICE ERO Headquarters for further custody review. *Id.* Once the case is referred to ICE ERO Headquarters, "authority over the custody determination transfers to the Executive Associate Commissioner" who provides the alien with notice of an additional review. *Id.* at 241.4(k)(2)(i). Procedures for reviews done at ICE ERO Headquarters are set forth in Section 241.4(i) and call for records review, a review panel, and a personal interview with the alien.

Per Section 241.4(i)(7), if during the custody review process set forth by this section, or at the conclusion of the review, "if the alien submits, or the record contains, information providing a substantial reason to believe that the removal of a detained alien is not significantly likely in the reasonably foreseeable future, [ICE ERO Headquarters] shall treat that as a request for review and initiate the review procedures under § 241.13." *Id.* ICE ERO Headquarters then reviews whether it can "make a prompt determination to release the alien under an order of supervision under § 241.13 because there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." *Id.*

An alien may also trigger the Section 241.13 review process by submitting a written request for release to ICE ERO Headquarters "asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." §

8

241.13(d)(1).  Section 241.13(e) sets forth the process for review at ICE ERO Headquarters if the alien submits a written request for release.

Under Section 241.13(g)(1), if ICE Headquarters determines after the review process set forth above, that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future, then ICE Headquarters must issue a written decision advising the alien of this decision.  ICE Headquarters must then make prompt arrangements to release the alien pursuant to an OSUP.  *Id.*

Petitioner's March 2024 release was not premised on a "no significant likelihood of removal" determination under 8 C.F.R. § 241.13.  This is evident based on the timing of the release – at the expiration of the 90-day removal period – and by the ICE decision maker – the ICE ERO Houston Deputy Field Office Director on behalf of the Field Office Director.  As explained above, a release under Section 241.13 occurs after the expiration of the 90-day removal period and after the custody review process has been transferred from the Field Office to ICE ERO Headquarters.  Such release decision is made by an ICE ERO Headquarters official, not the local Field Office Director, and such release decision advises the alien that the basis for the release was due to a finding of no significant likelihood that the alien will be removed in the reasonably foreseeable future.  The conclusion that release was not done under Section 241.13 on account of a finding of no significant likelihood of removal is further evident due to Petitioner's removal to Venezuela in November of 2023 which demonstrates that removal, upon the completion of the withholding only process, certainly was likely.

Because Petitioner's March 2024 release was pursuant to custody review required under 8 C.F.R. § 241.4, and not due to a finding of no significant likelihood of removal under Section 241.13, as another session of this Court recently explained, under Section 241.4, "ICE could

properly revoke petitioner's OSUP to enforce its prior removal order without making a finding that, due to changed circumstances, there is a significant likelihood of petitioner's removal in the reasonably foreseeable future." *Martinez v. Hyde*, No. CV 25-13035-NMG, 2025 WL 3719656, at *2 (D. Mass. Dec. 23, 2025).

                                                    Respectfully submitted,

                                                    LEAH B. FOLEY
                                                    United States Attorney

Dated: January 30, 2026                     By:    */s/ Mark Sauter*
                                                    Mark Sauter
                                                    Assistant United States Attorney
                                                    United States Attorney's Office
                                                    1 Courthouse Way, Suite 9200
                                                    Boston, MA 02210
                                                    Tel.: 617-748-3347
                                                    Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served by means of the Court's Electronic Case Filing system.

Dated: January 30, 2026                     By:    */s/ Mark Sauter*
                                                    Mark Sauter
                                                    Assistant United States Attorney