UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGORI JOSE SANCHEZ PAREDES,<br><br>Petitioners,<br><br>v.<br><br>DAVID WESLING, Field Office Director,<br>ANTONE MONIZ, Superintendent of<br>Plymouth County Correctional Facility,<br>TODD LYONS, Acting Direction of U.S.<br>Immigration and Customs Enforcement,<br>And KRIASTI NOEM, U.S. Secretary of<br>Homeland Security<br><br>Respondent. | Case No. 1:26-cv-10157<br><br>**PETITION FOR WRIT<br>OF HABEAS CORPUS** |

**REPLY TO COURT'S ORDER TO SHOW CAUSE WHY THE WRIT OF
HABEAS CORPUS SHOULD NOT BE DISMISSED**

Through the instant Memorandum, Petitioner Gregori Jose Sanchez Paredes replies to the government's opposition motion, filed January 27, 2026; their Expansion of the Record, filed January 30, 2026, and the Court's Order to show cause why the petition should not be dismissed, issued January 30, 2026.

**INTRODUCTION**

The legal issues presented in this Petition are similar to those recently addressed by other sessions of this Court. *See, e.g.*, *Mota Ramos v. McDonald, et al.*, No. 25-cv-13363-MJJ, Doc. No. 18 (D. Mass. Dec. 12, 2025); *Perez-Escobar v. Moniz, et al.*, 792 F. Supp. 3d 224 (D. Mass. 2025) and *Nguyen v. Lyons, et al.*, No. 26-cv-10226-JEK, Doc. No. 9 (D. Mass. Jan. 29, 2026) (finding that ICE's revocation of an OSUP violated the petitioner's due process rights as it failed

1

to provide adequate and meaningful notice as to why his particular release had been revoked other than parroting the language in 8 C.F.R. § 241.4) (relying on *Mota Ramos* and *Perez-Esco*).

The law in the First Circuit is crystal clear that in order to re-detain a person such as Mr. Sanchez Paredes, pursuant to 8 C.F.R. § 241.13, ICE must first make an individualized, fact-based determination based on changed circumstances that his removal had become significantly likely in the reasonably foreseeable future prior to taking him into custody. ICE did not do so here and manifestly has not met its burden to show changed circumstances that would justify Mr. Sanchez Paredes' re-detention.

Thus, the Court should grant Mr. Sanchez Paredes' Petition for Writ of Habeas Corpus and order Respondents to immediately release Mr. Sanchez Paredes pursuant to the conditions of the order of supervision issued to him in 2024.

## RELEVANT FACTS AND DISCUSSION

### A.  *PETTIONER IS GIVEN A FINAL ORDER OF REMOVAL AND PASSES AN RFI*

Petitioner Gregori Jose Sanchez Paredes ("Petitioner" or "Mr. Sanchez Paredes") is a Venezuelan national who entered the United States on or about December 2023. [Doc. No. 9-1 at 3].

This was Mr. Sanchez Paredes' second entry into the United States; he had previously entered on or about November 2023 but was briefly detained, given an order of removal, and returned to Venezuela. [Doc. No. 9-1 at 2].

Mr. Sanchez Paredes was desperate to return to the United States, however, because he was in fear for his life in Venezuela. According to his Form I-589, Application for Asylum and for Withholding of Removal, filed with the Immigration Court on November 14, 2024, Mr. Sanchez Paredes' family was politically active and he participated in a peaceful protest against

the government and, as a result, was arrested and tortured. This torture included threats, beatings, and having a bag put over his head until he could not breathe. In addition, Mr. Sanchez Paredes was beaten and threatened for being part of the LGBTQ community and was in constant fear for his life.

For these reasons, Mr. Sanchez Paredes fled to the United States again, as soon as he was able. He was detained by Immigration and Customs Enforcement ("ICE") on December 2, 2023 and his final order of removal was reinstated on or about December 5, 2023. [Doc. No. 9-1 at 3]. His 90 day "removal period," as defined by 8 U.S.C. § 1231(a)(1), began on that day and ended on March 4, 2024.

While detained by ICE, Mr. Sanchez Paredes expressed his fear of returning to Venezuela to ICE and, as a result, ICE conducted a Reasonable Fear Interview that Mr. Sanchez Paredes passed. Petitioner was referred to the immigration court for withholding-only proceedings. [Doc. No. 9-1 at 3].

## B. ICE RELEASES PETITIONER FROM DETENTION UNDER AN ORDER OF SUPERVISION

Because Mr. Sanchez Paredes was in withholding-only proceedings, ICE was unable to effectuate his removal in the reasonably foreseeable future. On February 2, 2024, ICE served Petitioner with a Notice that it would conducting a custody review. [Doc. No. 11-1].

The Notice states the following:

> "If ICE has not removed you from the United States within the removal period as set forth in INA 241(a) … ICE's Deciding Official will review your case for consideration of release on an Order of Supervision. Release, however, is dependent on your demonstrating to the satisfaction of the Attorney General that you will not pose a danger to the community and will not present a flight risk."

[Doc. No. 11-1].

The File Custody Review took place on March 15, 2024 [Doc. No. 11-2], which is 101 days after the final order of removal became final and 11 days after the conclusion of the 90-day removal period.

On March 15, 2024, ICE issued a Release Notification that indicated that Mr. Sanchez Paredes would be released "pending [his] removal from the United States." Significantly, the Notification states the following:

> "ICE will continue to make efforts to obtain your travel document that will allow the United States government to carry out your removal pursuant to your order of deportation, exclusion, or removal. In addition, you are required by law to continue to make good faith efforts to secure a travel document on your own and provide proof of your efforts to ICE."

[Doc. No. 11.2].

On that same day, ICE issued an Order of Supervision to Mr. Sanchez Paredes that states the following:

> "Because the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions[.]"

[Doc. No. 11-2 at 3].

After being released from ICE custody, Mr. Sanchez Paredes reentered society, obtained work authorization to support himself and his family, and complied with the requirements imposed upon him by his March 15, 2024 Order of Supervision.

After being released from ICE custody, Mr. Sanchez Paredes filed a Form I-589, Application for Withholding of Removal.

After being released from ICE custody, Mr. Sanchez Paredes and his partner gave birth to a son, Axel Mateo, who is a U.S. Citizen and approximately 7 months old. Mr. Sanchez Paredes is the primary financial support for his family.

Upon information and belief, Mr. Sanchez Paredes has not been arrested or convicted of any crimes and has complied with the requirements of his Order of Supervision.

### C. ICE SUDDENLY RE-DETAINS PETITIONER, DESPITE NO CHANGE IN CIRCUMSTANCES

Nevertheless, on or about November 13, 2025, ICE officers detained Mr. Sanchez Paredes at a scheduled check-in and revoked his order of supervision, without any reason given and without any advance notice. Petitioner had not violated the order of supervision and no circumstances had changed to make Petitioner's removal from the U.S. more reasonably foreseeable that it was previously.

On November 13, 2025, ICE served on Petitioner a document titled "Notice of Revocation of Release." Exhibit A. The notice states that his order of supervision has been revoked "based on a review of your official alien file and a determination that there are changed circumstances in your case." ICE goes on to say that it "has determined that the purposes of your release have been served and it is appropriate to enforce the removal order pending your withholding hearing." *Id*.

The language of the notice tracks language from 8 C.F.R. § 241.4(l)(2) purporting to allow certain officials to revoke an order of supervision if "[t]he purposes of release have been served," *id*. at 8 C.F.R. § 241.4(l)(2)(i), or if "[i]t is appropriate to enforce a removal order," *id*., 8 C.F.R. § 241.4(l)(2)(iii).

The Notice of Revocation of Release includes no specific facts in support of these conclusory statements taken from the language of the regulation. The Notice of Revocation and Release is signed by "David T Wesling," who is identified as "Field Office Director," and is a Respondent on this petition. Exh. A.

Respondents did not produce any evidence to suggest that an informal interview was conducted, and Petitioner has no recollection of such an interview. [Doc. No. 1 at 2].

As acknowledged by ICE in the Notice of Revocation of Release, Mr. Sanchez Paredes has a Form I-589, Application for Withholding of Removal pending with the Immigration Court. If he is granted protection from the Court, ICE has indicated that it may remove him to a third country. [Doc. 11 at 5]. However, ICE has presented no information regarding the country of removal, if Mr. Sanchez Paredes will be able to obtain the necessary authorization and travel documents for said country, or how long the process will take. Furthermore, he is entitled to present evidence to the court regarding his fear of persecution in any third country designated by ICE. Likewise, if Mr. Sanchez is denied protection from deportation to Venezuela, he will have the legal right to appeal the decision to the Board of Immigration Appeals and, if necessary, the First Circuit Court of Appeals.

Petitioner's ability to seek judicial appeal of a denial of a grant of withholding of removal is not negated by a previous removal to Venezuela. Respondent's repeated claims that he is being detained because he "has been successfully removed to Venezuela in the past" are unfounded.

Therefore, ICE's cursory statements that "there are changed circumstances" and that "there is a significant likelihood that [he] can be removed in the reasonable foreseeable future" are purely speculative. Exh. A.

## LAW AND ARGUMENT

### A. *ZADVYDAS* DOES NOT APPLY TO THIS CASE

Respondents argue that, because Mr. Sanchez Paredes has been detained for less than six months, his detention pending execution of his removal order is presumptively reasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001). However, this case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to re-detain Mr. Sanchez Paredes after he was issued a final order of

removal, detained, and subsequently released on an OSUP. DHS regulation 8 C.F.R. § 241.4 applies to non-citizens in Petitioner's situation.

### B. PETITIONER'S RELEASE WAS PREMISED ON "NO SIGNIFICANT LIKELIHOOD OF REMOVAL"

Despite Respondent's claims to the contrary, the circumstances surrounding his release, as well as the documents given to Mr. Sanchez Paredes at the time of release, are clear on their face and his release was premised on "no significant likelihood of removal," under 8 C.F.R. § 241.13.

Respondents claim that Mr. Sanchez Paredes release took place during the 90-day removal period which means that it was pursuant to 8 C.F.R. § 241.4. Respondents specifically explain that "a release under Section 241.13 occurs after the expiration of the 90-day removal period." [Doc. No. 11-9]. However, according to the declaration submitted by Respondents from Brian E. Sullivan, Supervisory Deportation and Detention Officer, Mr. Sanchez Paredes' order of removal was reinstated on or about December 5, 2023, his custody review took place on March 15, 2024, and he was released on March 18, 2024. [Doc. 9-1 at 3]. Therefore, he was released after the expiration of the 90-day removal period.

Further, the release documents issued to Mr. Sanchez Paredes on March 15, 2024 clearly referenced "no significant likelihood of removal." [Doc 11-2]. The Release Notification issued that day indicated that Mr. Sanchez Paredes would be released "pending [his] removal from the United States." Significantly, the Notification states the following:

> "ICE will continue to make efforts to obtain your travel document that will allow the United States government to carry out your removal pursuant to your order of deportation, exclusion, or removal. In addition, you are required by law to continue to make good faith efforts to secure a travel document on your own and provide proof of your efforts to ICE."

*Id.*

On that same day, ICE issued an Order of Supervision to Mr. Sanchez Paredes that states the following:

> "Because the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions[.]"

*Id.*

These documents make clear that Mr. Sanchez Paredes was released because ICE was unable to remove him within the 90-day removal period and, therefore, his release was premised on "no significant likelihood of removal," under 8 C.F.R. § 241.13.

C.  **DHS VIOLATED THEIR OWN REGULATIONS IN RE-DETAINING MR. SANCHEZ PAREDES**

According to the DHS regulation 8 C.F.R. § 241.4, DHS may revoke the release of a petitioner like Mr. Sanchez Paredes if 1) "[t]he purposes of release have been served," 2) "[t]he alien violate[d] any condition of release," 3) "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or 4) "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). Section 241.4(l)(1) requires Mr. Sanchez Paredes "be notified of the reasons for revocation." On November 12, 2025, ICE ERO issued a Notice of Revocation, which stated his order of supervision was revoked "based on a review of [his] official alien file and a determination that there are changed circumstances in [his] case." Exhibit A. The Notice of Revocation then stated that "the purposes for your release have been served and it is appropriate to enforce the removal order pending your withholding hearing." *Id*.

In re-detaining Mr. Sanchez Paredes, ICE has violated its own regulations governing post-order re-detention. *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025). "ICE, like

any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383 (D. Mass 2017). *See also, e.g.*, *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.").

Specifically, Mr. Sanchez Paredes was not given meaningful notice of his revocation and a meaningful opportunity to be heard during his informal review. [Doc. No. 1 at 2]. Supervisory Deportation and Detention Officer, Brian E Sullivan, stated in his declaration that "[t]hereafter, ICE conducted an informal interview to afford Petitioner an opportunity to respond to the reasons for the revocation. Petitioner did not provide a written statement or any documentation in response." [Doc. No. 9-1 at 4]. However, Respondents have not provided any documentation of this information interview or the results thereof. If such a review did, in fact, take place, we do not have any information regarding the questions raised in *Mota-Ramos*: Did the interviewer have the authority to give the interview? How much time was Mr. Sanchez Paredes given to review the Notice of Revocation before he was interviewed? Was Mr. Sanchez Paredes afforded an opportunity to consult an attorney? Was there a translator or an interpreter to assist him? Answers to these basic questions are necessary to determine whether Mr. Sanchez Paredes had a meaningful opportunity to respond to the reasons for the revocation of the Order of Supervision. Memorandum of Decision and Order, *Mota Ramos v. McDonald, et al.*, No. 25-cv-13363-MJJ, Doc. No. 18 (D. Mass. Dec. 12, 2025).

## **CONCLUSION**

For the foregoing reasons, Mr. Sanchez Paredes respectfully requests that the Court grant his Petition for Writ of Habeas Corpus and order Respondents to immediately release him pursuant to the conditions of the order of supervision issued to him in 2004.

|  |  |
|---|---|
|  | Respectfully submitted, |
| FEBRUARY 9, 2026 | GREGORI JOSE SANCHEZ PAREDES, |
|  | By his attorney, |
|  | */s/ Rhonda A. Tietjen*<br>Rhonda A. Tietjen<br>BBO#652346<br>PAIR Project<br>98 N. Washington St., Suite 106<br>Boston, MA 02114<br>781-964-6103; rtietjen@pairproject.org |

## **CERTIFICATE OF SERVICE**

      I, Rhonda A.Tietjen, certify that on this 9th day of February 2026, I caused a copy of the foregoing Response to be served on Respondents' counsel via the CM/ECF platform.

                                          */s/ Rhonda A. Tietjen*
                                          Rhonda A. Tietjen